J-A24022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

KENSINGTON CITIZENS : IN THE SUPERIOR COURT OF
COMMITTEE, BY JEFF CARPENTER, : PENNSYLVANIA
LIQUIDATING TRUSTEE :
:
:
:
v. :
:
:
:
BARRY GLOVER, AS KNOWN HEIR TO : No. 941 EDA 2019
THE ESTATE OF PARTHENA I. :
JOHNSON A/K/A PARTHENA T. :
JOHNSON :
:
:
APPEAL OF: ORIN CLYBOURN :

Appeal from the Order Entered February 11, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): January Term, 2017, No. 2166

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED DECEMBER 10, 2019**

Appellant, Orin Clybourn, appeals from the February 11, 2019 Judgment

entered in the Philadelphia County Court of Common Pleas in this quiet title

action. After careful review, we affirm.

We summarize the relevant facts as found by the trial court as follows.

On November 22, 1971, John Muldowney, Dorothy Anderson, Nives Milotich,

Marge Moore, and Kathryn Gruenbaum formed the Kensington Citizens

Committee ("KCC"). By deed dated June 14, 1972, KCC acquired the

_____

[*] Retired Senior Judge assigned to the Superior Court.

properties at 2554 and 2556 Frankford Avenue, Philadelphia (the "Properties").

In 2012, Appellee, Jeff Carpenter, and several other individuals in the Kensington neighborhood formed Arcadia Commons ("Arcadia") for the purpose of turning blighted, empty properties in the neighborhood into parks and community gardens. Arcadia identified the Properties as a potential location for a park. Appellee learned that KCC was the record owner of the Properties, but that KCC was defunct. Accordingly, Arcadia requested that the Pennsylvania Attorney General's office file a petition as *parens patriae* seeking an Order dissolving KCC and awarding the Properties to Arcadia under the doctrine of *cy pres*.

On February 29, 2016, the orphans' court issued a Decree awarding title to the Properties to Arcadia. The court appointed Appellee Trustee in Liquidation with authority to transfer title to the Properties to Arcadia. Appellee spent the next several months negotiating with the City of Philadelphia to satisfy outstanding liens against the Properties, one of which arose from a slip and fall and the other of which related to some past-due taxes. On August 22, 2016, before the transfer to Arcadia was effectuated, however, Carpenter learned that someone had recorded a deed dated December 12, 1990, purporting to transfer the Properties from KCC to Parthena Johnson (the "Johnson Deed").

**The Johnson Deed**

Parthena Johnson died in 1992. Appellant claimed that his uncle, Donald Spradly, found the Johnson Deed while cleaning out Parthena Johnson's basement in 2013. The Johnson Deed—recorded nearly 26 years after it was allegedly prepared and six months after the orphans' court awarded the Properties to Arcadia—purports to have been signed by the five incorporators of KCC. Samuel B, Wolfolk, a notary public of the City of Philadelphia purportedly notarized the Johnson Deed.

On December 1, 2016, Appellant recorded a deed dated November 30, 2016 purporting to transfer the Properties from Parthena Johnson's estate to him. Appellant asserted that he bought the Properties from his uncle, who was the administrator of Parthena Johnson's estate.

On December 7, 2016, Appellee contacted Nives Milotich, one of the KCC incorporators and an original KCC board member, to determine if she had any knowledge of the Johnson Deed. Milotich responded that same day that she knew nothing about it and that someone had forged her signature on the Johnson Deed. She also suggested that Muldowney's signature may have been forged because she believed that he had died years prior.

On April 14, 2017, Appellee filed an Amended Complaint, raising claims of Unjust Enrichment and Quiet Title, alleging that the Johnson Deed was a forgery.[1] Amended Complaint, 4/14/17, at ¶¶ 29-33. On August 22, 2017,

---

[1] Appellee alleged that the KCC incorporators' signatures and the signature of Notary Wolfork were all forgeries.

Appellant filed an Answer to the Amended Complaint, a Counterclaim, and a Crossclaim.  On September 11, 2017 and September 28, 2017, Appellee filed a Reply to New Matter and Crossclaim.

On February 6, 2018, Appellee filed a Motion for Summary Judgment, to which Appellant replied on March 30, 2018.  The trial court denied the Motion on April 12, 2018.

The trial court held a bench trial on October 24, 2018.  Appellee testified as liquidating administrator of KCC and presented the testimony of Milotich.  She testified that her signature on the Johnson Deed was a forgery and that another Deed signatory, John Muldowney, had died years before he purportedly signed the 1990 Johnson Deed.  The court received in evidence a certified copy of Muldowney's death certificate indicating a date of death of February 9, 1979—more than ten years before he purportedly signed the Johnson Deed.

Following trial, on November 6, 2018, the parties each submitted Proposed Findings of Fact and Conclusions of Law.  That same day, the trial court entered a verdict in favor of Appellee, quieting title in properties and holding that the Johnson Deed was a forgery.  On December 17, 2018, Appellant filed a Post-Trial Motion.  Following argument, the trial court denied Appellant's Motion.  The trial court entered judgment on the verdict on February 19, 2019.

This timely appeal followed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 4 -

Appellant raises the following issue on appeal:

Whether this Court should reverse the trial court's denial of [Appellant's M]otion for [P]ost-[T]rial relief and order judgment as a matter of law where [Appellee] failed to establish by clear and convincing evidence that the deed transferring title of [the Properties] to Parthena Johnson was a forgery?

Appellant's Brief at 4.

In support of this claim, Appellant presents two distinct arguments. First, Appellant argues that the trial court erred in concluding that the Johnson Deed is a forgery because Appellee failed to establish by clear and convincing evidence that any of the signatures on the deed had been forged. *Id.* at 22-25. Appellant essentially challenges the weight the court gave to Milotich's testimony that she had no knowledge of the Johnson Deed and her signature on it was a forgery. *Id.* at 31-36. In an additional effort to challenge the weight of the evidence, he also disputes that the evidence contained in Muldowney's death certificate established that it referred to the Muldowney who was a KCC officer. *Id.* at 37.

Second, he argues that, even if Appellee met his burden to establish that Milotich's and Muldowney's signatures were forgeries, he failed to prove that someone had forged all five of the signatures. *Id.* at 23-24. Appellant then makes the novel argument that, even if Milotich's and Muldowney's signatures were forgeries, as an incorporated non-profit any officer of KCC could validly transfer title on behalf of the organization. *Id.* at 25-28 (citing

The Act of 1972, Nov. 15 P.L. 1063, No. 271 § 7506(a)).[2]  He last avers that the three other KCC officers whose signatures Appellee does not allege were forgeries could have had any number of reasons to have signed the Johnson Deed in Milotich's and Muldowney's names, and, without proving that those officers intended to defraud, Milotich's and Muldowney's signatures were not forgeries under the law.  *Id.* at 28-30.

In an appeal from a trial court's verdict in a non-jury trial, our scope and standard of review is as follows.

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law.  Upon appellate review the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law.  Our scope of review regarding questions of law is plenary.
>
> Moreover, the trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

*Century Indemnity Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa. Super. 2017) (citations and quotation marks omitted).

We review a weight of the evidence claim in light of the following guidelines:

> appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial

_____

[2] The legislature subsequently replaced this statute with 15 Pa.C.S. § 5506.

judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Gold v. Rosen*, 135 A.3d 1039, 1041-42 (Pa. Super. 2016) (citation omitted). Further, the court "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Haan v. Wells*, 103 A.3d 60, 70 (Pa. Super. 2014) (citation omitted).

In reviewing a judgment entered in a quiet title action, this Court is limited to determining "whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citation and quotation marks omitted). This Court "will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Birdsboro Mun. Authority v. Reading Co. and Wilmington & Northern R.R.*, 758 A.2d 222, 225 (Pa. Super. 2000) (citations and quotation marks omitted).

A forged or fraudulent "instrument is not binding on any person and is wholly inoperative to transfer any title or right to property whether the holder is an innocent or guilty purchaser." *Harris v. Harris*, 239 A.2d 783 (Pa. 1968). *See also Stanko v. Males*, 135 A.2d 392 (Pa. 1957) (affirming order

that set aside a deed that was forged by owner's wife); ***Reck v. Clapp***, 98 Pa. 581 (Pa. 1881) (a forged deed cannot pass title of a property).

In its Rule 1925(a) Opinion, the trial court summarized the evidence upon which it relied when concluding that the signatures of Milotich and Muldowney were forgeries as follows:

> One of [the five original incorporators of KCC,] Nieves Milotich, testified at trial that she had no knowledge of the Johnson [D]eed and [that] the signature appearing on the [D]eed was not her own. The [c]ourt found Milotich to be credible and concluded [that] her signature on the Johnson [D]eed was a forgery.
>
> Milotich further testified that another of the KCC incorporators whose name appeared on the [D]eed, John Muldowney, had died many years before he allegedly signed the [D]eed. The [c]ourt received in evidence a certified copy of the death certificate for John Muldowney indicating a date of death of February 9, 1979. The address given for Muldowney on the death certificate was 2533 Webb Street, Philadelphia. This was the same address given for Muldowney in KCC's Articles of Incorporation. Furthermore, Milotich testified [that] she believed [that] Muldowney lived somewhere near Richmond Street. 2533 Webb Street is near Richmond Street. Milotich said she believed Muldowney died sometime in the late 1970's or 1980's.

Trial Ct. Op., 5/14/19, at 3-4.

The trial court credited the testimony of Milotich and the documentary evidence of Muldowney's death when it concluded that neither of those individuals signed their own signatures on the Johnson Deed. Accordingly, the court opined that "the evidence that at least two of the signatures on the Johnson [D]eed were forged was clear and convincing. Conseqently, the Johnson [D]eed is null [and] void *ab initio*." ***Id.*** at 4. Appellant asks us to reassess the credibility of Milotich's testimony and reweigh the evidence

- 8 -

presented at trial. We cannot and will not do so. We discern no abuse of discretion in the trial court's conclusion that Milotich's and Muldowney's signatures on the Johnson Deed were forgeries.

Appellant also argues, in the alternative, that because KCC is an incorporated non-profit, any one of whose officers had authority to bind the corporation as long as any of the signatures on the Johnson Deed were valid, the Deed was a valid conveyance instrument, even if forged signatures also appeared on the Deed. Appellant's Brief at 25-27. Essentially, Appellant suggests that, because Pennsylvania law does not require the signatures of all of KCC's corporate officers, we should sever the forged signatures from the non-forged signatures to render the Johnson Deed valid.

Appellant has not, however cited any controlling authority in support of the claim that severing the forged signatures from the non-forged signatures would render the Johnson Deed valid. We, therefore, affirm the trial court's conclusion that Milotich's and Muldowney's forged signatures voided the Johnson Deed *ab initio*, thus, rendering it wholly inoperative to transfer title to the Properties.[3, 4]

_____

[3] To the extent that Appellant also argues that Appellee failed to prove that the Johnson Deed had been forged because the he did not present evidence that the forgers intended to defraud, we find this argument waived as Appellant has raised it for the first time on appeal. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[4] In light of our disposition, we need not address Appellant's claim that, because the Johnson Deed was not a forgery and had been recorded first in time, the trial court erred in not entering Judgment in his favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/10/19</u>