## CITIZENS FIDELITY BANK & TRUST CO. v. LIBERTY NAT. BANK & TRUST CO.

Court of Appeals of Kentucky.
May 1, 1953.

Hottell, Stephenson & Allen, Louisville, for appellant.

Wade & Mapother and Elmer Morgan, Louisville, for appellee.

COMBS, Justice.

The question is which of two banks, the drawer or the payer, should bear the loss of a cashier's check in the amount of $550 paid on the forged indorsement of the payee?

Mary S. Barnes made application to the Liberty National Bank & Trust Company for a loan, executing and delivering to the bank at that time her note secured by a chattel mortgage on an automobile. The bank, on the same day, approved the loan and drew its cashier's check in the amount of $550, payable to Mrs. Barnes. In some unexplained manner the cashier's check came into the hands of Hugh L. Barnes, the former husband of Mary S. Barnes, and on the morning following the loan negotiations Hugh S. Barnes indorsed the check, which already bore the signature of Mary S. Barnes, to a Mr. Roe. Roe indorsed the check and presented it to the Citizens Fidelity Bank & Trust Company which paid it. On the same day, the Citizens Bank cleared the check through the Federal Reserve Bank at Louisville with an express guarantee of all prior indorsements. The Federal Reserve Bank credited the amount of the check to the Citizens Bank and charged it to the account of the Liberty Bank. Several months later Mary S. Barnes notified the Liberty Bank that her indorsement of the check was a forgery. The Liberty Bank called upon the Citizens Bank for reimbursement. The demand was refused and this action followed.

After hearing the testimony, the court submitted the case with instructions to the jury to find for the Liberty Bank, unless the jury believed the negligence of that bank caused the check to fall into the hands of an unauthorized person. The jury returned a verdict for the Liberty Bank.

The Citizens Bank argues: (1) It was entitled to a peremptory instruction, and (2) the jury's verdict is contrary to the evidence and the law. The argument is based on the uncontradicted testimony of Mary S. Barnes that the cashier's check was not delivered to her or to any authorized agent for her, and that her signature on the check is a forgery.

We find no error in the proceedings. It is true that the officer of the bank who handled the loan did not remember the details of the transaction, and the testimony of Mrs. Barnes that the check was not delivered to her or to her agent is uncontradicted. But the admitted facts and circumstances are sufficient to sustain the jury's apparent belief that the check was obtained by Hugh L. Barnes from the possession of Mary S. Barnes, the payee, rather than from the Liberty Bank. There is testimony that the relationship between Mrs. Barnes and her former husband was friendly, and that he sometimes visited at her home. Other circumstances are sufficient to create the inference Mrs. Barnes

had more knowledge of the case than is disclosed by her testimony. For instance, she omitted to explain why she failed to give the bank instructions as to delivery of the check, or why she failed to make any inquiry about the disposition of the check for several months thereafter. It seems unlikely she would have left her executed note and mortgage with the bank for that period of time without some inquiry as to the status of the loan. It is also shown that a number of payments were made on the note and mortgage, and, although the record is silent as to who made these payments, the jury would have been justified in concluding that the payments were made by or at the direction of Mrs. Barnes. A jury is not required to believe the testimony of a witness, even though it is uncontradicted, when that testimony is so much at variance with common experience and the usual course of human conduct as to make it unbelievable. Morton v. Sanders, 178 Ky. 836, 200 S.W. 24; Roland v. Murray, Ky. 239 S.W.2d 967.

Since the question of the Liberty Bank's negligence was properly submitted to the jury and there is sufficient evidence to sustain the jury's verdict the case falls within the rule laid down in Security Savings Bank of Covington Kentucky v. First National Bank of Michigan City, Indiana, 106 F.2d 542, 544, 127 A.L.R. 116. We quote from the opinion in that case:

"There is general agreement that, even without an express guaranty of prior indorsements, a drawee who pays a check without knowledge that an essential indorsement has been forged, may recover from either the holder paid or a prior indorser, if guilty of no negligence that is injurious to the defendant after discovery of the forgery. (Citing cases.)

\*　\*　\*　\*　\*　\*

"But, even if appellee, by the exercise of reasonable care, might have discovered the forgeries, its failure to do so would not preclude recovery. A drawee must determine the genuineness of the drawer's signature at its own peril when it pays a check. However, as to the genuineness of an indorser's signature, timely notice after discovery that an indorsement has been forged is all that is required."

Other cases to the same effect are Bank of America National Trust & Savings Ass'n v. Security First National Bank, 32 Cal.App.2d 647, 90 P.2d 335; First National Bank v. Farmers & M. Bank, 56 Neb. 149, 76 N.W. 430; Bergman v. Avenue State Bank, 284 Ill.App. 516, 1 N.E. 2d 432. Also see Farmers National Bank of Augusta v. Farmers & Traders Bank of Maysville, 159 Ky. 141, 166 S.W. 986, L.R.A.1915A, 77, wherein the distinction is drawn between the duties of the payer in the case of a forged check, that is, a forgery of the drawer's signature, and a case such as this involving a forged indorsement.

The judgment is affirmed.